IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

JOSEPH GARZA (01)
KEVIN MCDONNELL (02)
JAMES RICHARDSON (03)
CRAIG FENTON (04)

NO.  3:22-CR-390-S

**GOVERNMENT'S RESPONSE TO
DEFENDANT JOSEPH GARZA'S MOTION TO DIMSISS**

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

*/s/ Marty Basu*
RENEE M. HUNTER
Assistant United States Attorney
Texas State Bar No. 24072942
MARTY BASU
Assistant United States Attorney
Illinois State Bar No. 6302360
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8809
Email: Renee.Hunter@usdoj.gov
Email: Marty.Basu@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ II

TABLE OF AUTHORITIES ....................................................................... III

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 2

    I.      Factual Background ................................................................... 2

    II.     Procedural Posture .................................................................... 3

ARGUMENT ................................................................................................. 6

    I.      The different mens rea requirements for the wire fraud
          counts and tax fraud counts do not warrant dismissal. ........... 6

          A.        Elements of each offense ............................................ 6

          B.        Tax fraud counts are separate and distinct from the
                    wire fraud counts. ....................................................... 7

          C.        Two different charged counts can have two different
                    mens rea requirements ................................................ 8

    II.     The tax fraud statute does not preempt the wire fraud
          statute's application to this case. .............................................. 12

    III.    The wire fraud statute encompasses fraud against the
          government. .............................................................................. 16

    IV.    Defendants are mistaken as to counts being multiplicitous. . 17

CONCLUSION ............................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*Albernaz v. United States*, 450 U.S. 333 (1981)......................................................... 9

*Blockburger v. United States*, 284 U.S. 299 (1932) ...................................................9, 14

*Harris v. United States*, 359 U.S. 19 (1959) ........................................................... 9

*Kelly v. United States*, 590 U.S. 391 (2020)........................................................... 16

*Kousisis v. United States*, 605 U.S. 114 (2025)....................................................... 17

*Morey v. Commonwealth*, 108 Mass. 433 (1871)....................................................... 9

*Pasquantino v. United States*, 544 U.S. 349 (2005)................................................... 14, 16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ........................................................................................... 13

*United States v. Batchelder*, 442 U.S. 114 (1979)...................................................9, 10, 13

*United States v. Brooks*, 681 F.3d 678 (5th Cir. 2012) .......................................... 7

*United States v. Chrane*, 529 F.2d 1236 (5th Cir. 1976).......................................... 14

*United States v. Clark*, 577 F.3d 273 (5th Cir. 2009)........................................... 7

*United States v. Dale,* 991 F.2d 819 (D.C. Cir. 1993) ............................................. 15, 17

*United States v. Evans*, 892 F.3d 692 (5th Cir. 2018)............................................ 7

*United States v. Gavires*, 220 U.S. 338 (1911) .................................................... 9

*United States v. Greenlaw*, 84 F.4th 325 (5th Cir. 2023).......................................... 7

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003)........................................... 17

*United States v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y.1974) ....................................................................................... 14

*United States v. Miller,* 545 F.2d 1204 (9th Cir. 1976)............................................ 15, 17

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016)........................................... 16

*United States v. Ohle*, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) ..................................... 14, 17

*United States v. Okoronkwo*, 46 F.3d 426 (5th Cir. 1995) ........................................... 10, 15

*United States v. Richman*, 85 F. App'x 978 (5th Cir. 2004) ................................................ 7

*United States v. Ross*, 948 F.3d 243 (5th Cir. 2020) ..................................................... 10, 13

*United States v. Shermetaro,* 625 F.2d 104 (6th Cir. 1980) .............................................. 15

*United States v. Stockman*, 947 F.3d 253, 262 (5th Cir. 2020) .......................................... 7

*United States v. Woodward*, 469 U.S. 105 (1985)............................................................... 9

**STATUTES**

18 U.S.C. § 1343 ..............................................................................................................3, 4

18 U.S.C. § 1349 ...............................................................................................................4

18 U.S.C. § 286 ........................................................................................................... 10, 15

18 U.S.C. § 287 ........................................................................................................... 10, 15

18 U.S.C. § 371 ................................................................................................................5

26 U.S.C. § 7206(2)...........................................................................................................4

## **INTRODUCTION**

The United States of America hereby files this response in opposition to the defendants Joseph Garza, Kevin McDonnell, James Richardson, and Craig Fenton's Motion to Dismiss Counts of Indictment. (Dkt. 100). Defendants argue that when the offense conduct alleges violations related to the fraudulent filing of taxes, the government is only permitted to charge violations under Title 26 and not under any Title 18 statute. To be clear, defendants offer this theory without any support from existing precedent. That is, despite citations to nearly 70 cases, defendants' motion does not offer one opinion—either in this circuit or any other—where a court has dismissed a wire fraud count because the underlying conduct involved tax fraud. The government is also unaware of any court in the Fifth Circuit doing so.

And for good reason. Despite defendants' insistence to the contrary, a different mens rea requirement does not give rise to an unconstitutional deprivation of rights. Nor are defendants correct that where statutes criminalize the same conduct—an issue not unique or uncommon to fraud cases—one statute must preempt the other. Finally, defendants' insistence that the wire fraud statute textually does not reach fraud against the government is contrary both to nearly 70 years of precedent and common sense.

More importantly, defendants misunderstand the gravamen of the indictment, which is that it charges two distinct offenses: (1) a fraudulent scheme and conspiracy that made use of wires; and (2) tax fraud. Convictions on these counts will require separate evidence to address the entirely distinct elements of the offenses.

Regardless, clearly established Supreme Court precedent holds that when an act

**Response to Motion to Dismiss—Page 1**

violates more than one criminal statute, the government decides which statute to charge. For those reasons, as detailed further below, the Court should deny the defendants' motion.

## BACKGROUND

### I.    Factual Background

The defendants are charged with creating and promoting a massive tax shelter scheme.[1]  As alleged in the indictment, defendant Garza, a tax lawyer, and defendants McDonnell, Richardson, and Fenton, tax professionals and preparers, marketed their fraudulent tax shelter to high-net-worth business owners.  Defendants promised clients they would shelter significant amounts of income from taxes and directly profited from the fraudulent shelter by charging clients a percentage of their tax savings.

Clients who chose to participate in the scheme would decide up front how much money they wanted to pass through the shelter to avoid income tax.  The defendants then created and caused others to create shell companies for the clients and had clients move their money from one sham entity to another before returning the funds to client-controlled bank accounts for the clients' own personal use.  Defendants also created or caused to be created fake invoices with fraudulent business expenses, fraudulent valuation reports of the sham entities, and sham contractual agreements between the entities, all in an effort to conceal the fraud.

Based on these sham transactions, tax professionals, including defendants

---

[1] All allegations are summarized from the Superseding Indictment.  (Dkt. 16).

**Response to Motion to Dismiss—Page 2**

McDonnell, Richardson, and Fenton, with the aid of Garza, prepared false and fraudulent tax returns for the clients' operating companies and sham entities.  These returns contained false statements regarding, among other things, the entities' expenses, income, and deductions.  This resulted in tax returns falsely claiming significantly lower taxes due to the IRS, and clients not paying income tax on virtually any of the money they passed through the tax shelter.

The scheme lasted approximately nine years, involved numerous clients, and resulted in approximately $1 billion in unreported income and $200 million in unpaid taxes.  Defendants directly profited from the unreported income by charging clients a percentage of any money they chose to pass through the shelter.

## II.    Procedural Posture

On November 15, 2022, the grand jury returned the 47-count Superseding Indictment.  (Superseding Indictment, dkt. 16).  Counts One through Eighteen charge Garza with Wire Fraud (18 U.S.C. § 1343).  (*Id*. at ¶¶ 16-18).  The scheme, as set out in Paragraph 15 of the Superseding Indictment, is what is described above: the defendants conspired with each other to promote their fraudulent tax shelter to clients, assisted them in the preparation of false tax returns to fraudulently reduce their clients' tax liability, and profited off of those clients by charging them a percentage of the fraudulently obtained savings.  (*Id*. at ¶ 15).  The count charges that Garza "devised and intended to devise the aforesaid scheme and artifice to defraud the Internal Revenue Service, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises."  (*Id*. at ¶ 17).  Thus, the count alleges that the scheme involved the defrauding

**Response to Motion to Dismiss—Page 3**

of the IRS and obtaining money by way of false and fraudulent pretenses, presentations, and promises.

Each count of wire fraud alleges a wire that was used in furtherance of the fraudulent tax shelter scheme. (Superseding Indictment at ¶ 18). Notably, not every wire charged is an electronic submission of a tax return. For example, the wire alleged in Count One involves a check that was used to pay for a valuation. (*Id.*). Count Nine alleges a monetary wire transaction for payment of fees for the tax shelter. (*Id.*). However, all the wires are alleged to have been caused by Garza for the purpose of executing and attempting to execute the fraud scheme.

Count Nineteen charges all four defendants with Conspiracy to Commit Wire Fraud (18 U.S.C. §§ 1349 and 1343). (Superseding Indictment at ¶¶ 19-24). The count alleges that the object of the conspiracy was for the defendants to: (1) assist individual taxpayers with setting up the tax shelter to illegally reduce their income tax; (2) conceal the scheme from the IRS through the creation of false and fraudulent documents; and (3) unlawfully and unjustly enrich themselves through fees and other compensation. (*Id.* at ¶¶ 21-23). Count Nineteen further alleges that the manner and means of the conspiracy included the wires alleged in Counts One through Eighteen. (*Id.* at ¶ 24).

Counts Twenty through Forty-One charge Garza with Aiding and Assisting in the Preparation and Presentation of False and Fraudulent Income Tax Returns (26 U.S.C. § 7206(2)), while Counts Forty-Two through Forty-Six charge McDonnell, Richardson, and Fenton with the same. (Superseding Indictment at ¶¶ 25-28). Each count alleges that the charged defendant or defendants aided and assisted in the preparation of a tax

form containing a material misstatement. That is, every one of the charged tax counts is a false tax return.

Count Forty-Seven charges all four defendants with Conspiracy to Defraud the United States (18 U.S.C. § 371). (Superseding Indictment at ¶¶ 29-31). This count charges a *Klein* conspiracy, where the defendants are charged with impeding the lawful functions of the IRS by impeding, impairing, obstructing, and defeating its ability to assess and collect federal income tax. The overt acts alleged in furtherance of this conspiracy include not just the submission of tax forms but also emails between defendant coconspirators in furtherance of the submission of the false and fraudulent tax returns. (*Id*. at ¶ 31).

On February 27, 2026, all four defendants joined in a motion to dismiss the wire fraud counts, which they define as Counts One through Nineteen on various grounds. (Dkt. 100). Thus, defendants do not challenge Counts Twenty through Forty-Seven.[2]

Defendants challenge the wire fraud counts by generally arguing that because they involve tax fraud, the government should only be permitted to charge the offense conduct with violations of Title 26 tax fraud crimes. They largely base these arguments on theories of statutory interpretation and construction. As argued below, defendants are ultimately wrong on the law and misconstrue the facts.

---

[2] The government notes that it may still choose to voluntarily dismiss some of the counts in the indictment in an effort to be more efficient in its trial presentation but that such dismissals would not be because of any legal deficiency raised by this motion. If the government chooses to do so, it will alert the Court and all parties before trial.

Response to Motion to Dismiss—Page 5

## ARGUMENT

**I.    The different mens rea requirements for the wire fraud counts and tax fraud counts do not warrant dismissal.**

Defendants first argue that the government is creating "an unconstitutional end-run" by charging wire fraud, which they argue has a lesser mens rea than tax fraud, and, therefore, allows the government to convict without the requisite intent necessary for a tax fraud charge.  (Mot. at 2).  First, this argument presupposes that the wire fraud scheme and conspiracy are merely alleging tax fraud.  They are not.  The scheme, as detailed in the Superseding Indictment, is the selling of the fraudulent tax shelter plan to clients and making use of the wires in furtherance of the scheme.  While defrauding the IRS by filing false tax returns on behalf of their clients is certainly a part of the scheme, it is not the entirety of it.  Merely presenting evidence regarding the filing of a false tax return would not prove the wire fraud.  Thus, where two distinct schemes exist, there is no requirement for them to have the same mens rea.

But more generally, defendants provide no support for the theory that any offense involving false tax returns must be proven under the higher mens rea, or that the mens rea required for wire fraud is so deficient so as to result in a violation of Due Process.  The defendants' argument seeks to rewrite the words enacted in Title 18.  The indictment, by contrast, sets out the offense exactly as Congress drafted it.

### A.    Elements of each offense

In order to prove a violation under Section 7206(2), the government must prove that "the defendant willfully aided, assisted, counseled, or advised another in the

preparation or presentation under the internal revenue laws of a document that is fraudulent or false as to any material matter." *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009). The "willfully" element has been further clarified as requiring that an act be done "voluntarily and deliberately, with the intention of violating a known legal duty." *United States v. Stockman*, 947 F.3d 253, 262 (5th Cir. 2020).

The Fifth Circuit has held that wire fraud, on the other hand, requires proof of "any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived." *United States v. Greenlaw*, 84 F.4th 325, 339 (5th Cir. 2023) (quoting *United States v. Evans*, 892 F.3d 692, 711-12 (5th Cir. 2018)). Wire fraud requires "a specific intent to defraud," which the *Greenlaw* court further explained required proof that defendants "intended to deprive [others] of money or property through misrepresentations." *Id*. at 345. And, of course, wire fraud requires proof of "an interstate wire communications were used to further the scheme." *United States v. Richman*, 85 F. App'x 978, 980 (5th Cir. 2004).

Notably, despite the defendants' assertion to the contrary, good faith can be a defense to wire fraud, even if a good faith instruction is not always warranted. The Fifth Circuit in *United States v. Brooks*, the case to which defendants cite, explained as much, stating that a good faith instruction is not necessary where the content of a good faith defense is raised during argument. 681 F.3d 678, 708 n.26 (5th Cir. 2012) (noting that defendants were able to argue that their good faith belief negated the intent element).

**B.     Tax fraud counts are separate and distinct from the wire fraud counts.**

Defendants' argument assumes that the conduct charged in the wire fraud counts

and the tax fraud counts are identical, which is incorrect.  In the tax fraud counts the government is alleging that the defendants assisted in the preparation of false tax returns.  Each Section 7206(2) violation requires proof of a single fraudulent tax return prepared, nothing more.  These counts do not rely on the government proving that the defendants intended to obtain money, only that they knew that the tax returns were false and assisted in the filing of those returns.

The wire fraud counts rely on a similar but entirely distinct scheme whereby defendants are alleged to have promoted their fraudulent tax shelter to clients promising income tax savings, prepared and file false tax returns fraudulently concealing income from the IRS, and enriched themselves by charging clients a percentage of the tax savings, with each wire fraud count requiring the use of a wire in furtherance of the scheme alleged.  Thus, in order to prove the wire fraud counts and the specific intent to defraud, the government would have to prove the entire scheme, not just the preparation of a single tax return.

Thus, while similar, each scheme has an object distinct from the other, with elements distinct from the other.  To wit: proving the tax fraud counts alone would not prove any corresponding wire fraud count, and the tax fraud counts do not require proof of an interstate wire.  Defendants offer no reason why two different violations charging two separate schemes cannot have two separate mens rea requirements.

**C.    Two different charged counts can have two different mens rea requirements**

Even to the extent the underlying conduct was identical—which it is not—

defendants offer no support for the proposition that different statutes, with different mens rea requirements, cannot be charged for the same conduct.  Defendants do nothing more than note the difference in mens rea standards without offering any support in case law or statute that charging wire fraud "creates constitutional error."  (Mot. at 4).

On the other hand, long-standing Supreme Court precedent has held that where conduct overlaps, the government can choose which violation to bring.  In particular, the Supreme Court has made clear that an identical set of facts, or a single fact, may properly lead to conviction and punishment under multiple statutes.  *See, e.g.*, *United States v. Woodward*, 469 U.S. 105, 107 (1985) (single factual episode can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause); *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981) (same); *Harris v. United States*, 359 U.S. 19 (1959) (consecutive sentences permitted where single transaction violated two distinct statutory provisions); *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (same); *United States v. Gavires*, 220 U.S. 338, 342 (1911) ("a single act may be an offense against two statutes") (quoting *Morey v. Commonwealth*, 108 Mass. 433 (1871)).

In *United States v. Batchelder*, the Supreme Court held that "a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment."  442 U.S. 114, 125 (1979).  The Court also made clear that, "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants."  *Id*. at 123-24.  The reasoning behind these conclusions is plain: "Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's

**Response to Motion to Dismiss—Page 9**

discretion." *Id*. at 124.  Additionally, he prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." *Id*. at 125.

Defendants argue in a separate part of the motion that *Batchelder* does not control because of the specific statutes at issue in that case.  (Mot. at 14-15).  But the Fifth Circuit has extended *Batchelder* to stand for a far broader proposition: "[o]nce a prosecutor determines the evidence supports both offenses' elements, he has discretion to charge defendant with either (or both), subject to the constraint that his choice not be the product of discriminatory animus." *United States v. Ross*, 948 F.3d 243, 248–49 (5th Cir. 2020) (citing *Batchelder*, 442 U.S. at 125).

Defendants appear to argue that very nature of a tax fraud offense inherently requires a higher mens rea standard only prescribed by the willfulness requirement found in Title 26.  (Mot. at 2-4).  But this completely ignores tax fraud offenses brought under 18 U.S.C. §§ 286 and 287.  In *United States v. Okoronkwo*, the Fifth Circuit upheld convictions of the defendants charged with false preparation of tax returns under 18 U.S.C. § 287, where the government must prove "(1) that the defendant presented a false or fraudulent claim against the United States; (2) that the claim was presented to an agency of the United States; and (3) that the defendant knew that the claim was false or fraudulent."  46 F.3d 426, 430 (5th Cir. 1995).  Defendants were also charged with "conspiracy to defraud the U.S. through the filing of false returns," a violation of 18 U.S.C. § 286, which requires the government to prove: (1) that there was a conspiracy to defraud the United States; (2) that the defendant knew of the conspiracy and intended to

join it; and (3) that the defendant voluntarily participated in the conspiracy. *Id*.  As the elements above show, neither statute as applied to tax offenses—and the specific tax offense of preparing a false tax return—requires the heightened willfulness standard that defendants aver is required.

Even in practice, it is not clear how defendants would be prejudiced by the "lesser mens rea."  The wire fraud counts still require the government to prove that the defendants had a specific intent to defraud through misrepresentations, specifically with regard to the falsity of the tax returns.  Thus, it is not clear how a defendant who "had a bona fide misunderstanding of the tax law," "had a frank difference of opinion," or "a good faith belief that he complied with the tax laws," would possibly be convicted of the wire fraud scheme.

Defendants also take issue with the fact that they were required to use the wires to file tax returns and that this has the potential to convert "virtually every alleged false return" to a wire fraud count.  (Mot. at 5).  This argument assumes that all tax preparers are required to file electronically, which they are not.

But even if the mandated use of wires does allow a substantial number of false tax return cases to be brought as wire fraud charges, defendants are unable to articulate how this would be a Due Process violation.  Neither the text of the statute nor the breadth of case law interpreting the wire fraud statute notes an exception to a defendant's use of wires to engage in a fraud merely because it involves tax returns.

While not dispositive of the issue, the government believes it is instructive to review the long-standing DOJ Tax Division Policy regarding the appropriateness of

**Response to Motion to Dismiss—Page 11**

charging of mail and wire fraud with respect to tax shelter.  Tax Division Directive 128, effective October 2004, provides in pertinent part that:

> The Tax Division may approve mail fraud, wire fraud or bank fraud charges in tax-related cases involving schemes to defraud the government or other persons if there was a large fraud loss or a substantial pattern of conduct. . . . For example, mail fraud (18 U.S.C. §1341) or wire fraud (18 U.S.C. §1343) charges may be appropriate if . . . the target promoted a fraudulent tax scheme.

Tax Division Directive No. 128, https://www.justice.gov/archives/usam/tax-resource-manual-14-tax-division-directive-no-128 (last visited March 12, 2026).  This superseding indictment charges exactly the kinds of schemes envisioned in that longstanding policy. Defendants here are not merely charged with a one-off instance of aiding in the preparation of false tax returns but a repeated pattern of conduct whereby they marketed the fraudulent tax shelter to numerous clients, giving rise to the underlying wire fraud scheme and counts.  It is only because of the existence of the broader scheme, and the use of interstate wires in furtherance of the scheme, that the government charged the wire fraud counts at issue.

## II.     The tax fraud statute does not preempt the wire fraud statute's application to this case.

Defendants assert that the wire fraud statute cannot be used to charge conduct involving tax fraud because the tax fraud "controls" over the general wire fraud statute, relying on several theories and canons of statutory interpretation.  They are, however, unable to cite to any precedent for their novel theories because there are none.  And while the issue is not addressed specifically in the Fifth Circuit, the large majority of sister circuits have found the exact opposite—i.e., that Title 18 violations can be used with

Response to Motion to Dismiss—Page 12

regard to tax fraud allegations.

Defendants rely on the canon *lex specialis*—that the specific governs over the general—to assert that the specific tax fraud statute "governs" over the more general wire fraud statutes. (Mot. at 8). But the cases in support of this do not stand for that proposition. Rather, those cases make clear that a specific statute governs over a general where two statutes *are in conflict*. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission"). Here, that is not an issue because there is no conflict. The wire fraud statute does not proscribe conduct that the tax fraud statutes would otherwise specifically allow.

But more importantly, the canon does not support the defendants' contention that the existence of a specific criminal statute prohibits the government from bringing a charge under a more general one. No canon does. As noted above, and consistent with long-standing legal precedent, the government may bring charges under any statute so long as the statute covers the offense conduct. *Ross*, 948 F.3d at 248–49 (citing *Batchelder*, 442 U.S. at 125).

Defendants next argue that while the Supreme Court did occasionally allow for the bringing of tax charges under other criminal provisions, it is only proper where "the tax statute authorizes cumulative penalties *and* the overlapping statute is elementally independent" and that neither are present here. (Mot. at 12; emphasis in the original).

But that has never been the standard under the Supreme Court or the Fifth Circuit

**Response to Motion to Dismiss—Page 13**

for determining when it is appropriate to charge the same conduct under different statutes. Instead, courts look to the *Blockburger* to "determine whether separate offenses may be carved out of a single incident." *United States v. Chrane*, 529 F.2d 1236, 1238 (5th Cir. 1976) (citing *Blockburger*, 284 U.S. 299). That test asks the court to look at "whether each [offense] requires proof of a fact that the other does not." *Id*.

As explained above, the statutes at issue here do. The wire fraud violations require use of the wires; the tax fraud statutes do not. The wire fraud requires a specific intent to deprive in order to obtain something of value; the tax fraud statutes do not. Indeed, the two statutes are meant to serve two distinct legislative purposes: the tax fraud statutes protect the integrity of the tax system whereas the wire fraud statutes "punishes fraudulent use of the wires." *Pasquantino v. United States*, 544 U.S. 349, 357 (2005).

The government further notes that while no court in the Fifth Circuit has directly addressed the appropriateness of bringing a wire fraud charge to address conduct involving tax fraud, courts in other circuits have. In *United States v. Ohle*, a Southern District of New York court addressed the defendant's argument that the government impermissibly used the wire fraud statute to reach an alleged criminal tax conspiracy. 678 F. Supp. 2d 215, 220 (S.D.N.Y. 2010). The defendant cited to a previous district court case, *United States v. Henderson*, which had held the mail fraud statute was "'superseded by the comprehensive system of penalties Congress later enacted in the Internal Revenue Code.'" *Id*. (quoting *United States v. Henderson*, 386 F.Supp. 1048 (S.D.N.Y.1974)). The *Ohle* court explicitly rejected the defendants' argument and the *Henderson* decision, noting that several courts in sister circuits held that mail and wire

**Response to Motion to Dismiss—Page 14**

fraud counts were appropriate to charge tax related counts. *Id.*; (citing *United States v. Dale,* 991 F.2d 819, 849 (D.C. Cir. 1993) (upholding wire fraud count where wire was in furtherance of a tax scheme); *United States v. Shermetaro,* 625 F.2d 104, 110–11 (6th Cir. 1980) (upholding prosecution for conspiracy to defraud the United States and federal tax evasion); *United States v. Miller,* 545 F.2d 1204, 1216 (9th Cir. 1976), *overruled on other grounds by Boulware v. United States,* 552 U.S. 421 (2008) (upholding prosecution for mail fraud and federal tax evasion).

The government further notes that tax fraud conduct is routinely charged under other Title 18 offenses. Chief among them, and relevant to this case, are charges brought under Section 371 *Klein* conspiracies. Curiously, defendants take no issue with the fact that a broad criminal statute under Title 18 is routinely used to charge tax fraud, or that it is being used to charge tax fraud here. Nor can they, as the defendants surely concede that tax fraud has long been recognized in the Fifth Circuit as fitting within the purview of a *Klein* conspiracy. *See* Fifth Circuit Pattern Jury Instruction 2.15B (giving as an example for a conspiracy the "impairing, obstructing, or defeating the lawful function of the Internal Revenue Service in the ascertainment, assessment or collection of income taxes due"). The government also notes, as explained above, that the Fifth Circuit has recognized the use of 18 U.S.C. § 286 and § 287 to charge tax fraud counts. *Okoronkwo*, 46 F.3d at 430.

Finally, while the government is unaware of Fifth Circuit case that specifically addresses the charging of tax fraud and wire fraud in the promotion of a fraudulent tax shelter, it has upheld convictions where tax fraud counts were paired with wire fraud

**Response to Motion to Dismiss—Page 15**

counts.  In *United States v. Morrison*, the Court upheld a conviction where tax preparation business owners were convicted of aiding in the preparation of false tax returns and wire fraud where the scheme was to lie to potential buyers of their business regarding the false preparation of taxes.  833 F.3d 491, 500 (5th Cir. 2016).

The government again notes that it is not simply charging a wire fraud count for every submission of a false tax return but rather a wire fraud scheme involving the defendants' promotion of a tax shelter where the submission of the false tax returns is only one part.   Under those facts, it is beyond reason to suggest that the government is forced to charge that conduct within the strict confines of Title 26.

### III.    The wire fraud statute encompasses fraud against the government.

The defense again relies on a novel theory of statutory interpretation to claim that the wire fraud statute does not reach schemes to defraud a sovereign, and thus excludes the federal government.  (Mot. at 17).

While not specifically addressed, recent Supreme Court precedent regarding wire fraud, suggests otherwise.  In *Pasquantino*, the Supreme Court took up the issue of whether the property being deprived under wire fraud could be taxes and upheld the application of the wire fraud statute where a sovereign—in that case, the Canadian government—was deprived.  544 U.S. at 352-53.  Later in *Kelly v. United States*, the Court sought to cabin the reach of the wire fraud statute, by holding that where the wire fraud statute was used to allege a scheme defrauding the Port Authority of New York and New Jersey, the facts did not support a "taking of property."  590 U.S. 391, 400 (2020). Finally, in *Kousisis v. United States*, the Supreme Court upheld wire fraud and conspiracy

**Response to Motion to Dismiss—Page 16**

to commit wire fraud convictions where the defendants defrauded the Pennsylvania Department of Transportation by making misrepresentations regarding their contract bids regarding special status designations.  605 U.S. 114 (2025).

What is notable about all three cases is that the object of the wire fraud is a government agency or sovereign.  And in all three, where the question presented to the Supreme Court was whether the wire fraud statute was impermissibly being used the charge conduct the statute did not reach, the Court took no issue with its application to cases where alleged conduct involved defrauding the government and, instead, focused on whether there was a sufficient property right being alleged.  While the government notes that this question was never specifically addressed, the Court surely would have taken the opportunity to limit the scope of the statute in one of these cases if it believed that wire fraud did not reach government entities.  *See also United States v. Griffin*, 324 F.3d 330, 353 (5th Cir. 2003) (though not addressing question of whether fraud statute could involve government victims, upholding mail fraud count where defendant was Texas Department of Housing and Community Affairs).

Moreover, as noted previously, several courts in sister circuits have allowed for prosecution of tax fraud under the wire fraud statute.  None have thought to exclude governments.  *See* Ohle, 678 F. Supp. 2d at 220 (S.D.N.Y.);  *Dale,* 991 F.2d at 849 (D.C. Cir.); *Miller,* 545 F.2d at 1216 (9th Cir.).

## IV.    Defendants are mistaken as to counts being multiplicitous.

Defendants claim that six wire fraud counts are impermissibly multiplicitous because they charge the two different false statements on the same form: (1) Counts

Seven and Eight; (2) Counts Twelve and Thirteen; and (3) Counts Seventeen and Eighteen.  (Mot. at 22).  The defendants make the same claim about three tax fraud counts: (1) Counts Thirty and Thirty-One; (2) Counts Thirty-Four and Thirty-Five; and (3) Counts Thirty-Eight and Thirty-Nine.  (Mot. at 23).  The defendants argue that the unit of prosecution is a return, not a statement.

The government agrees, and, in fact, each does relate to a separate and distinct tax filing.  No count charges a false statement on a form charged in a different count.  The confusion results because clients had multiple false tax returns filed on their behalf.  For example, Count Seven refers to a tax return associated with client D.H.'s Investment Company while Count Eight refers to a tax return associated with D.H.'s Management Contract.  Thus, there is no prejudice to the defendants.

## **CONCLUSION**

For these reasons, the government respectfully asks that the Court deny the defendants' motion to dismiss.

**Response to Motion to Dismiss—Page 18**

RYAN RAYBOULD
UNITED STATES ATTORNEY


*/s/ Marty Basu*
RENEE M. HUNTER
Assistant United States Attorney
Texas State Bar No. 24072942
MARTY BASU
Assistant United States Attorney
Illinois State Bar No. 6302360
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8809
Email: Renee.Hunter@usdoj.gov
Email: Marty.Basu@usdoj.gov

**Response to Motion to Dismiss—Page 19**